Daniel W. NORTHUP, Plaintiff,

v.

UNITED STATES of America and James J. Graham, District Director of Internal Revenue for the District of Connecticut, Defendants.

P. W. HINE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Myrtis C. USHER, Plaintiff,

v.

James J. GRAHAM, District Director of Internal Revenue for the District of Connecticut, Defendant.

Civ. Nos. 4614, 4615, 4903.

United States District Court
D. Connecticut.

Nov. 16, 1955.

George E. Cleary, Lee N. Johnson, New York City, for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and David A. Wilson, Jr., Sp. Assts. to Atty. Gen., Simon S. Cohen, U. S. Atty., Hartford, Conn., for defendants.

SMITH, Chief Judge.

In these three cases money received by the taxpayers on the redemption of shares of second preferred stock in I. Newman & Sons Inc. and in the case of Northup on sale of such preferred stock to his daughter, Jean N. Miles, and to a trust of which she was the beneficiary were treated in the taxpayers' returns as capital gains. The Commissioner held that the full amount received on redemption and sale of the shares should be treated as dividend income under Section 115(g) I.R.C. (1939), 26 U.S.C.A. § 115(g). Deficiencies were assessed, paid, claims for refund duly filed and this action timely begun.

■ No hard and fast rule for determining when payments received by shareholders on the retirement of preferred stock must be treated as a dividend for income tax purposes can be gathered from the cases. Elements which must be weighed are (1) whether the payments are pro rata with corporate ownership, Keefe v. Cote, 1 Cir., 213 F.2d 651,—here they are not, which favors the taxpayers' position, (2) whether the stock was issued with the purpose of tax avoidance by later redemption—here the issue was before the law provided any tax incentive for such issue and redemption, negativing any such motive, (3) whether the corporation is closely held—here the ownership is in a fairly small group, but not concentrated in one family, (4) whether the stock retirement coincided with a contraction of corporate business, Imler v. C. I. R., 11 T.C. 836,—not present here, which favors the government's position, (5) whether all taxpayer's shares were redeemed, Zenz v. Quinlivan, 6 Cir., 213 F.

2d 914, ending all his interest in the corporation—here common stock interests, though disproportionate, still existed, (6) whether the payments are made from current earnings or surplus—here from current earnings, which favors the government's position, (7) whether there is a compelling business reason for the retirement. This last is perhaps the most weighty element when the other elements are in fairly even balance. In the case at bar there were business reasons for the retirement, the greater flexibility in future financing, if necessary, when only one class of stock exists, the desirability of removing a restriction on payments of dividends on the common, and the desirability of avoiding any question of added tax by reason of excessive retention of earnings. Yet none of these reasons had created any immediate need or substantial pressure. On balance, these business pressures were too light in this case to outweigh the fact of transmission of current earnings to some of the shareholders by means of stock retirement. Taxwise, it is correctly to be considered essentially equivalent to the distribution of a taxable dividend to those shareholders. Tax advantage to the shareholders need not be pro rata to common shareholdings, particularly in closely held corporations, for it to characterize a distribution of current earnings by means of stock retirement as essentially equivalent to a dividend for tax purposes.

■ It is otherwise with the payments received by the taxpayer on sales to his daughter and her trust. The sales were bona fide and the shares were not paid off in the year of the sales. Even if the taxpayer knew that there was a strong probability that the shares would be retired in the next year, and made the sales when he did for the purpose of legal tax avoidance, the payments to him did not thereby become dividends paid out by the corporation. cf. Beard v. Commissioner, 4 T.C. 756; Hobby, 2 T.C. 980.

Form of judgment in accordance with this opinion may be submitted on notice.

Finding of Facts

1. The plaintiff, Daniel W. Northup, is an individual residing at Moose Hill Road, Guilford, Connecticut, and is a resident of the District of Connecticut.

2. The defendant, James J. Graham, is District Director of Internal Revenue at Hartford, Connecticut, and a resident of the District of Connecticut.

3. The plaintiff, Daniel W. Northup, paid Federal income tax and interest thereon for the year 1945 as follows:

| | Tax | Interest |
|---|---|---|
| Prior to March 15, 1946 | $26,106.31 | |
| November 6, 1952 | 16,450.21 | $6,503.92 |
| January 15, 1953 and February 16, 1953 | | 53.40 |
| Totals | $42,556.52 | $6,557.32 |

The payment of $53.40 interest was made to defendant, James J. Graham, but the other payments were made to his predecessors in office.

4. On or about November 20, 1952 the plaintiff, Daniel W. Northup, duly filed a timely claim for refund of $22,954.13, income tax and interest paid thereon for the year 1945. A true copy of said claim for refund is attached to the stipulation of facts filed herein and marked Exhibit A. On or about March 11, 1953 the plaintiff, Daniel W. Northup, filed an amended claim for refund of income tax and interest paid thereon for the year 1945 in the amount of $23,007.53. A true copy of said amended claim for refund is attached to the stipulation of facts filed herein and marked Exhibit B.

5. The plaintiff, Daniel W. Northup, paid Federal income tax and interest thereon for the year 1946 as follows:

| | Tax | Interest |
|---|---|---|
| Prior to April 2, 1947 | $31,108.95 | |
| November 6, 1952 | 13,860.41 | $4,648.37 |
| January 15, 1953 and February 16, 1953 | | 44.99 |
| Totals | $44,969.36 | $4,693.36 |

The payment of $44.99 interest was made to defendant, James J. Graham, but the other payments were made to his predecessors in office.

6. On or about November 20, 1952, the plaintiff, Daniel W. Northup, duly filed a timely claim for refund of $18,-508.78 income tax and interest paid thereon for the year 1946. A true copy of said claim for refund is attached to the stipulation of facts filed herein and marked Exhibit C. On or about March 11, 1953, the plaintiff, Daniel W. Northup, filed an amended claim for refund of income tax and interest paid thereon for the calendar year 1946 in the amount of $18,553.77. A true copy of said amended claim for refund is attached to the stipulation of facts filed herein and marked Exhibit D.

7. The Commissioner of Internal Revenue has made no decision with respect to the claims for refund of 1945 and 1946 income tax and interest paid thereon filed by the plaintiff, Daniel W. Northup. More than six months had elapsed after the filing of said claims for refund for 1945 and 1946 when the action brought by Daniel W. Northup was started.

8. On or about February 28, 1945 the plaintiff, Daniel W. Northup, transferred to I. Newman & Sons, Inc., a corporation, 295 shares of preferred stock of that corporation for $15,487.50. Said 295 shares of preferred stock were capital assets and had been held by the plaintiff, Daniel W. Northup, for more than six months prior to the transfer.

9. The Commissioner of Internal Revenue held that the $15,487.50 which the plaintiff, Daniel W. Northup, received from I. Newman & Sons, Inc. for said 295 shares of preferred stock was dividend income. The plaintiff, Daniel W. Northup, claims that said transfer resulted in a long term capital gain of $6,922.98.

10. On April 17, 1945, the plaintiff, Daniel W. Northup, sold 180 shares of preferred stock of I. Newman & Sons, Inc. for $9,000. 160 shares were sold to Mrs. Jean N. Miles, who is the daughter of Daniel W. Northup, and 20 shares were sold to a trust of which said Mrs. Jean N. Miles was the grantor and sole beneficiary with broad powers. Said shares were paid for by the purchasers on or before May 4, 1945. Said 180 shares of preferred stock were capital assets and had been held by the plaintiff, Daniel W. Northup, for more than six months prior to the sale.

11. The Commissioner of Internal Revenue held that the $9,000 received by Daniel W. Northup on the sale of said 180 shares of preferred stock was dividend income. The plaintiff, Daniel W. Northup, claims that said sale gave rise to a long term capital gain of $3,774.19.

12. During April, 1946, the plaintiff, Daniel W. Northup, transferred to I. Newman & Sons, Inc., a corporation, 205 shares of preferred stock of that corporation for $10,762.50. Said 205 shares of preferred stock were capital assets and had been held by Daniel W. Northup for more than six months prior to the transfer.

13. The Commissioner of Internal Revenue held that the $10,762.50 received by Daniel W. Northup for said 205 shares of preferred stock was dividend income. The plaintiff, Daniel W. Northup, claims that said transfer gave rise to a long term capital gain of $3,872.17.

14. On November 21, 1946, Daniel W. Northup sold 206 shares of preferred stock of I. Newman & Sons, Inc. for $10,300. Said sale was made to Mrs. Jean N. Miles, who is the daughter of Daniel W. Northup. Said shares were paid for by the purchaser on November 26, 1946. Said 206 shares of preferred stock were capital assets and had been held by the plaintiff, Daniel W. Northup, for more than six months prior to such sale.

15. The Commissioner of Internal Revenue held that the amount of $10,300 received by Daniel W. Northup on the sale of said 206 shares of preferred stock was dividend income. Daniel W. Northup claims that said sale gave rise to a long term capital gain of $3,322.58.

16. Attached to the stipulation of facts filed herein and marked Exhibit E is a copy of the 90-day letter of the Commissioner of Internal Revenue, dated June 25, 1952, determining the deficiencies in income tax of Daniel W. Northup for the years 1945 and 1946.

17. The plaintiff, P. W. Hine, is an individual, residing at Liberty Street, Madison, Connecticut, and is a resident of the District of Connecticut.

18. The plaintiff, P. W. Hine, paid Federal income tax and interest thereon for the year 1945 as follows:

| | Tax | Interest |
|---|---|---|
| Prior to March 15, 1946 | $6,073.67 | |
| November 24, 1952 | 2,537.62 | $1,014.46 |
| Totals | $8,611.29 | $1,014.46 |

All of such payments were made to persons who are no longer in office.

19. On or about December 1, 1952, the plaintiff, P. W. Hine, duly filed a timely claim for refund of $3,571.59 income tax and interest paid thereon for the year 1945. A true copy of said claim is attached to the stipulation of facts filed herein and marked Exhibit F.

20. On or before March 15, 1947, the plaintiff, P. W. Hine, paid Federal income tax for the year 1946 in the amount of $8,739.64.

21. On or about March 29, 1949, the plaintiff, P. W. Hine, duly filed a timely claim for refund of $1,656.34 income tax paid for the year 1946. A true copy of this claim is attached to the stipulation of facts filed herein and marked Exhibit G.

22. The plaintiff, P. W. Hine, paid Federal income tax and interest thereon for the year 1947 as follows:

| | Tax | Interest |
|---|---|---|
| On or before March 15, 1948 | $14,040.53 | · · |
| March 6, 1953 | 2,669.87 | $750.63 |
| Totals | $16,710.40 | $750.63 |

23. On or about April 3, 1953 the plaintiff, P. W. Hine, duly filed a timely claim for refund of $4,197.85 income tax and interest paid thereon for the calendar year 1947. A true copy of this claim for refund is attached to the stipulation of facts filed herein and marked Exhibit H.

24. More than six months had elapsed after the filing of said claims for refund for 1945, 1946 and 1947, when the action brought by P. W. Hine was started.

25. On or about February 28, 1945, the plaintiff, P. W. Hine, transferred to I. Newman & Sons, Inc., a corporation, 125 shares of preferred stock of that corporation for $6,562.50. Said 125 shares of preferred stock were capital assets and had been held by P. W. Hine for more than six months.

26. The Commissioner of Internal Revenue held that the amount of $6,562.-50 received by P. W. Hine for said 125 shares of preferred stock was dividend income. P. W. Hine claims that said transfer gave rise to a long term capital gain of $4,065.71.

27. In 1946 P. W. Hine received from I. Newman & Sons, Inc., as a dividend in property paid to common stockholders 61 shares of preferred stock of Dora Miles Co. P. W. Hine reported said dividend income at $5,445.90, valuing said 61 shares of preferred stock of Dora Miles Co. at approximately $90 per share. The fair market value of said 61 shares of preferred stock of Dora Miles Co. at the time of its distribution as a dividend was not in excess of $2,440, or $40 per share. The plaintiff, P. W. Hine, therefore, in his original return for 1946, overstated his dividend income arising from the receipt of said 61 shares of preferred stock of Dora Miles Co. by $3,005.90.

28. In July, 1946, the plaintiff, P. W. Hine, transferred to I. Newman & Sons, Inc. 126 shares of preferred stock of that corporation for $6,615. Said 126 shares of preferred stock were capital assets and had been held by P. W. Hine for more than six months prior to said transfer.

29. The Commissioner of Internal Revenue held that the amount of $6,615 received by the plaintiff from I. Newman & Sons, Inc. for said 126 shares of preferred stock was dividend income and on this basis, although conceding that P. W. Hine had overstated his other dividend income by $3,005.90, determined a deficiency in tax for 1946 of $1,017.81, the assessment of which was barred by

the statute of limitations. The plaintiff, P. W. Hine, contends that said transfer gave rise to a long term capital gain of $3,566.61.

30. For the year 1947 the plaintiff, P. W. Hine, was entitled to a deduction for alimony not claimed on his original return of $1,296. On or about May 12, 1950, the plaintiff duly filed a timely claim for refund of $777.35 income tax paid for the year 1947 on this ground. A true copy of said claim for refund is attached to the stipulation of facts filed herein and marked Exhibit I.

31. On or about March 14, 1947, the plaintiff, P. W. Hine, transferred to I. Newman & Sons, Inc. 125 shares of preferred stock of that corporation for $6,-562.50. Said 125 shares of preferred stock were capital assets and had been held by P. W. Hine for more than six months prior to said transfer.

32. The Commissioner of Internal Revenue held that the amount of $6,562.-50 received by P. W. Hine from I. Newman & Sons, Inc. for said 125 shares of preferred stock was dividend income. P. W. Hine claims that said transfer resulted in a long term capital gain of $3,538.31.

33. Attached to the stipulation of facts filed herein and marked Exhibit J is a copy of the 90-day letter of the Commissioner of Internal Revenue, dated June 25, 1952, determining a deficiency in the income tax of Mr. P. W. Hine for the calendar year 1945 in the amount of $2,537.62. Attached to the stipulation of facts filed herein and marked Exhibit K

is a copy of a letter from District Director of Internal Revenue James J. Graham to Mr. P. W. Hine, dated July 29, 1953, stating that the claim for refund for 1945 in the amount of $3,571.59, filed by P. W. Hine was disallowed. Notice of rejection of said claim for refund for 1945 was sent to P. W. Hine by registered mail on November 6, 1953. Attached to the stipulation of facts filed herein and marked Exhibit L is a copy of a letter from District Director of Internal Revenue James J. Graham to Mr. P. W. Hine, dated July 29, 1953, stating that the claim for refund for 1946 in the amount of $1,656.34 filed by P. W. Hine was disallowed and determining a deficiency in 1946 income tax of $1,017.81, the assessment of which is barred by the statute of limitations. Notice of rejection of said claim for refund for 1946 was sent to P. W. Hine by registered mail on November 6, 1953. Attached to the stipulation of facts filed herein and marked Exhibit M is a copy of a letter from District Director of Internal Revenue James J. Graham to P. W. Hine, dated January 21, 1953, stating that the claim for refund for 1947, based on the alimony issue, is being allowed, but determining on other grounds a deficiency in the income tax of P. W. Hine for the year 1947 in the amount of $2,669.87.

34. The plaintiff, Myrtis C. Usher, is an individual residing at Brook Road, Woodbridge, Connecticut, and is a resident of the District of Connecticut.

35. The plaintiff, Myrtis C. Usher, paid Federal income tax and interest thereon for the year 1945, as follows:

| | Tax | Interest |
|---|---|---|
| Prior to March 15, 1946 | $1,493.78 | |
| October 28, 1953 | 2,590.67 | $1,062.17 |
| Totals | $4,084.45 | $1,062.17 |

Said payments of $2,590.67 and $1,062.17 were made to the defendant, James J. Graham.

36. On November 6, 1953, the plaintiff, Myrtis C. Usher, duly filed a timely claim for refund for $3,652.84, income

tax and interest paid thereon for the year 1945. A true copy of this claim is attached to the stipulation of facts filed herein and marked Exhibit N.

37. The plaintiff, Myrtis C. Usher, paid Federal income tax and interest thereon for the year 1946, as follows:

| | Tax | Interest |
|---|---|---|
| Prior to March 15, 1947 | $1,977.38 | |
| October 28, 1953 | 6,666.07 | $2,337.60 |
| Totals | $8,643.45 | $2,337.60 |

The payments of $6,666.07 and $2,337.60 were made to defendant, James J. Graham.

38. On November 6, 1953, the plaintiff, Myrtis C. Usher, duly filed a timely claim for refund of $8,840.86 income tax and interest thereon paid for the year 1946. A true copy of said claim for refund is attached to the stipulation of facts filed herein and marked Exhibit O.

39. The Commissioner of Internal Revenue has made no decision with respect to the claims for refund for 1945 and 1946 income tax and interest paid thereon, filed by the plaintiff, Myrtis C. Usher. More than six months had elapsed after the filing of said claims for refund for 1945 and 1946 when this action brought by Myrtis C. Usher was started.

40. In November, 1945, plaintiff, Myrtis C. Usher, transferred to I. Newman & Sons, Inc., a corporation, 193 shares of preferred stock of that corporation for $10,132.50. Said 193 shares of preferred stock were capital assets and had been held by the plaintiff, Myrtis C. Usher, for more than six months prior to said transfer.

41. The Commissioner of Internal Revenue held that the $10,132.50 which the plaintiff, Myrtis C. Usher, received from I. Newman & Sons, Inc. for said 193 shares of preferred stock was dividend income. The plaintiff, Myrtis C. Usher, claims that said transfer resulted in long term capital gain of $6,396.98.

42. During 1946, plaintiff, Myrtis C. Usher, transferred to I. Newman & Sons, Inc., a corporation, 386 shares of preferred stock of that corporation for $52.-50 per share, a total of $20,265. Said transfers were made on the following dates:

| June 1, 1946 | 150 shares |
|---|---|
| August 1, 1946 | 43 shares |
| November 2, 1946 | 80 shares |
| December 3, 1946 | 113 shares |
| Total | 386 shares |

All of said 386 shares of preferred stock were capital assets and had been held by the plaintiff, Myrtis C. Usher, for more than six months prior to the date of the transfer.

43. The Commissioner of Internal Revenue held that the $20,265 which the plaintiff, Myrtis C. Usher, received from I. Newman & Sons, Inc. for said 386 shares of preferred stock was dividend income. The plaintiff, Myrtis C. Usher, claims that said transfer resulted in long term capital gain of $11,545.77.

44. I. Newman & Sons, Inc. is a corporation organized under the laws of the State of Connecticut.

45. From 1923 through 1930, the business of I. Newman & Sons, Inc. was prosperous. In only two of the years from 1924 to 1930, inclusive, was the corporation's annual net income less than $100,000. Prior to 1936 the company had paid off its debentures and retired all of its preferred stock.

46. For the years 1931 to 1934, inclusive, the company lost money, such losses aggregating $127,000 according to the company's audited statements.

47. Although the company made fair profits in the fiscal year ended November 30, 1935, Mr. Northup and Mr. Harry C.

Usher, Sr. were very fearful for the future of the company. Mr. Northup had told the stockholders and directors on several occasions that if the company continued to go downhill he was going to recommend liquidation of the business.

48. Mr. Northup was also much concerned that Charles W. Hine and Harry C. Usher, Jr., sons of P. W. Hine and Harry C. Usher, Sr., who were working for the company on salary, would not stay with it because of the unpromising outlook for the future and might seek employment elsewhere where they could get more money than the company could afford to pay them at that time.

Mr. C. W. Hine had discussed with Mr. Northup the question of whether or not it was advisable for him to stay with the company. The fathers, P. W. Hine and Harry C. Usher, Sr., were getting along in years and were the principal active executive officers of the company. Mr. Northup was much concerned as to the danger that their sons, who were promising executive material, would decide to leave the business.

49. Mr. Northup conceived the idea of having the company issue a preferred stock dividend, the par value of which would substantially absorb the net assets of the company. He said that if this were done he would be willing to give a substantial portion of his common stock to C. W. Hine and Harry C. Usher, Jr. as an inducement to them to stay with the company. His proposal was accepted by the company and by C. W. Hine and Harry C. Usher, Jr. This was the sole motive for the issuance of the stock dividend on February 29, 1936. After the issuance of the stock dividend the common stock had no book value.

50. After the issuance of the stock dividend, Mr. Northup gave 500 shares of common stock to C. W. Hine, who then owned but 50 shares of common stock, and gave 200 shares of common stock to Harry C. Usher, Jr., who then owned no common stock. These 700 shares were about 25% of the common stock held by Mr. Northup. C. W. Hine and Harry C.

Usher, Jr. were in no way related to Mr. Northup. Mr. Northup gave no common stock to John Usher, Mr. Usher's other son, who was not working for the company. He gave 500 shares to C. W. Hine and only 200 to Harry C. Usher, Jr. because Hine was older and had been with the company longer. The company could not afford to pay these young men higher salaries or bonuses as an inducement to stay with the company because of its financial condition and its program of reducing expenses.

51. C. W. Hine and Harry C. Usher, Jr. did remain with the company. C. W. Hine is now Vice-President and General Sales Manager. Harry C. Usher, Jr. is Vice-President in charge of production. The 700 shares of stock given to them in 1936, which then had only a speculative value, are now worth about $100,000.

52. On February 29, 1936, 9,349 shares of second preferred stock, having an aggregate par value of $467,450, were issued as a stock dividend, share for share, to the holders of the 9,349 shares of common stock outstanding. The second preferred stock issued on February 29, 1936, as a stock dividend had a par value of $50 per share and was entitled to a 6% cumulative dividend. So long as the preferred stock was outstanding, dividends on the common stock could not exceed 10% of the corporation's net profits, after reserves, etc. The second preferred stock was redeemable at $52.-50 per share, at a 5% premium, but no provision was made for any sinking fund or mandatory redemption. The 5% premium on the redemption and the restriction on common dividends followed the corresponding features of the corporation's first preferred stock. There was no discussion or consideration given at the time to the continuance of these preexisting provisions. The distribution of said stock dividend in second preferred stock gave rise to no taxable income to the recipients.

53. When the second preferred stock was issued on February 29, 1936, there was no plan for the redemption of such preferred stock. No such plan was even

thought of or discussed. Mr. Harry C. Usher, Sr. did get advice from his attorney and his accountant that the distribution of the stock dividend would not give rise to taxable income, but he did not ask for or get any advice as to what the income tax consequences would be if the company redeemed the second preferred stock, as that possibility never entered his head, or as far as he knew, the heads of anybody associated with him.

54. The company's net income, as computed by it, for the fiscal years 1936, 1937 and 1938 was less than the cumulative preferred dividend on the 9,172 shares of second preferred stock then outstanding, which amounted to $27,516 per year and the full dividends on the second preferred stock were not paid. 177 shares of the 9,349 shares of second preferred stock originally issued in 1936 had been transferred to the company by Mr. P. W. Hine in 1936 in payment of a debt.

55. In 1939, the company's net income as computed by it was $68,553.75. During that year it paid the current and back dividends on the second preferred stock totalling $41,274, paid a dividend of $.20 per share on the common stock and retired 551 shares of the second preferred stock. No plan was adopted at that time with respect to further redemptions of second preferred stock. There was then no basis in the financial history of the company for planning on any such complete redemption.

56. From 1939 to 1947 the company did acquire for redemption by payment of the redemption price of $52.50 per share, or in some cases by purchase at a lower figure, the following amounts of second preferred stock:

| 1939 | – | 551 shares |
| 1940 | – | 1,292 " |
| 1941 | – | 1,980 " |
| 1942 | – | 0 " |
| 1943 | – | 799 " |
| 1944 | – | 127 " |
| 1945 | – | 1,475 " |
| 1946 | – | 1,763 " |
| 1947 | – | 1,185 " |

57. The company paid dividends on its common stock as follows:

| 1939 | – | $ .20 per share |
| 1940 | – | .50 " " |
| 1941 | – | 0 " " |
| 1942 | – | 0 " " |
| 1943 | – | .12 " " |
| 1944 | – | 0 " " |
| 1945 | – | .75 " " |
| 1946 | – | 2.50 " " |

During the war the company's business was increasing and it required additional funds for use in ordinary business transactions.

58. The amounts distributed to plaintiff Northup in redemption of preferred stock in 1939, 1940 and 1941 were taxed in full as ordinary income as required by the income tax law then in effect, because such transactions were distributions in partial liquidation and he had no cost for the preferred stock then transferred to the company.

59. The retirements of second preferred stock did not come about because of any need or demand by particular stockholders for funds. All of the preferred stockholders were treated substantially alike, each being paid $52.50 per share for the stock turned in to the company by the stockholder and such retirements were generally pro rata among the preferred stockholders. All preferred stockholders were treated alike, whether or not they owned any common stock.

60. The plaintiff, P. W. Hine, who was indebted to the corporation, immediately surrendered 177 shares of the second preferred stock received by him on February 29, 1936 to the corporation in satisfaction of his indebtedness, leaving 9,172 shares of second preferred stock outstanding at March 31, 1936.

61. Attached to the stipulation of facts filed herein and marked Exhibit P is a true statement of condition of I. Newman & Sons, Inc. at March 31, 1936.

62. The following tabulation shows in column 1 the net income of I. Newman & Sons, Inc. for each of the fiscal years

1923 to 1940 as shown by the company's statement audited by public accountants, and in column 2 the net income as stated in the federal income tax returns after deducting federal income and excess profit taxes. Column 3 shows the dividends paid on the company's first preferred stock, and column 4 shows the dividends paid on the second preferred stock.

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| | Net Income per Auditors' Statement | Net Income After Taxes Computed From Tax Returns | 1st Pfd. Dividend Paid | 2nd Pfd. Dividend Paid |
| 9/27–11/30/23 | 49,821.12 | 51,629.97 | | |
| 11/30/24 | 188,303.09 | 206,909.86 | 45,999.93 | |
| 11/30/25 | 47,415.99 | 42,286.26 | 48,000. | |
| 11/30/26 | 195,605.26 | 189,035.77 | 48,000. | |
| 11/30/27 | 166,958.91 | 159,378.53 | 48,000. | |
| 11/30/28 | 83,181.90 | 90,404.36 | 38,946. | |
| 11/30/29 | 107,304.82 | 115,220.24 | 35,928. | |
| 11/30/30 | 106,514.94 | 113,931.77 | 26,934. | |
| 11/30/31 | (26,703.02) | (18,791.39) | 17,966. | |
| 11/30/32 | ( 6,800.83) | ( 580.01) | 9,946. | |
| 11/30/33 | (38,967.38) | (37,085.34) | 7,936. | |
| 11/30/34 | (55,409.99) | (50,439.55) | 7,936. | |
| 11/30/35 | 41,000.08 | 56,644.67 | 7,936. | |
| 11/30/36 | 23,898.20 | 31,958.27 | | 22,913.61 |
| 11/30/37 | 7,167.88 | 17,192.99 | | 20,637. |
| 11/30/38 | 14,601.76 | 16,274.74 | | 20,637. |
| 11/30/39 | 68,553.75 | 78,591.72 | | 41,274. |
| 11/30/40 | 99,956.10 | 108,666.21 | | 25,683. |

( ) indicates net loss.

63. The holders of the common stock and of the second preferred stock of I. Newman & Sons, Inc. as of December 31 of each of the years 1936 to 1947, inclusive, were as follows:

Finding 63.

## I. NEWMAN & SONS, INC.
### HOLDINGS OF COMMON AND PREFERRED STOCK AT DECEMBER 31

| | 1936, 1937, 1938 Common | Pfd. | 1939 Common | Pfd. | 1940 Common | Pfd. | 1941 Common | Pfd. | 1942 Common | Pfd. |
|---|---|---|---|---|---|---|---|---|---|---|
| James T. Patterson | 601 | 601 | 601 | 565 | 601 | 480 | 601 | 350 | 601 | 350 |
| Harry C. Usher | 10 | 10 | 10 | 9 | 10 | 8 | 10 | 6 | 10 | 6 |
| P. W. Hine | 1937 | 1760 | 1937 | 1654 | 1937 | 1406 | 1937 | 442 | 1937 | 442 |
| O. D. Mowry | 100 | 100 | 100 | 94 | 100 | 80 | 100 | 58 | 100 | 58 |
| O. D. and Virginia Mowry | 400 | 400 | 400 | 376 | 400 | 320 | 400 | 234 | 400 | 234 |
| A. Klopot | 1200 | 1100 | 1200 | 934 | 1200 | 794 | 1200 | 507 | 1200 | 407 |
| E. H. Mandlebaum | 50 | 50 | 50 | 47 | 50 | 40 | 50 | 29 | 50 | 29 |
| Benjamin Gottschalk | 50 | 50 | 50 | 47 | 50 | 40 | 50 | 29 | 50 | 29 |
| Ira Levy | 50 | 50 | 50 | 47 | 50 | 40 | 50 | 29 | 50 | 29 |
| Daniel W. Northup | 2133 | 2713 | 2133 | 2550 | 2133 | 2167 | 2133 | 1122 | 2133 | 1042 |
| Myrtis C. Usher | 2068 | 2068 | 1968 | 1098 | 1968 | 933 | 1968 | 681 | 1968 | 681 |
| Charles W. Hine | 550 | 50 | 550 | 47 | 550 | 40 | 550 | 29 | 550 | 29 |
| Daniel W. Northup and Jean Miles, Trustee | | 120 | | 113 | | 96 | | 70 | | 70 |
| Henry A. Klopot | | 100 | | 194 | | 165 | | 193 | | 293 |
| Harry C. Usher, Jr. | | | | 423 | | 360 | | 263 | | 263 |
| John C. Usher | 200 | | 300 | 423 | 300 | 360 | 300 | 263 | 300 | 263 |
| Second National Bank, Trustee | | | | | | | | 584 | | 584 |
| Jean N. Miles | | | | | | | | 460 | | 540 |
| Albany Distributing Co. | | | | | | | | | | |
| Harvard Trust Co. | | | | | | | | | | |
| James T. Patterson, Jr. | | | | | | | | | | |
| Reconstruction Finance Corp. | | | | | | | | | | |
| Yale University | | | | | | | | | | |
| T. L. Watson Co. | | | | | | | | | | |
| Charles B. Walden | | | | | | | | | | |
| Ann J. Morgan | | | | | | | | | | |
| Helen T. Morgan | | | | | | | | | | |
| Daniel J. Morgan | | | | | | | | | | |
| Lizzie Gottschalk | | | | | | | | | | |
| Egbert J. Miles, Jr. | | | | | | | | | | |
| | 9349 | 9172 | 9349 | 8621 | 9349 | 7329 | 9349 | 5349 | 9349 | 5349 |

Finding 63.

# I. NEWMAN & SONS, INC.

## HOLDINGS OF COMMON AND PREFERRED STOCK AT DECEMBER 31

| | 1943 Common | 1943 Pfd. | 1944 Common | 1944 Pfd. | 1945 Common | 1945 Pfd. | 1946 Common | 1946 Pfd. | 1947 Common | 1947 Pfd. |
|---|---|---|---|---|---|---|---|---|---|---|
| James T. Patterson | — | — | — | — | — | 5 | — | — | — | — |
| Harry C. Usher | 182 | 5 | 182 | 5 | 182 | 251 | 182 | 2 | 182 | 0 |
| P. W. Hine | 1937 | 376 | 1937 | 376 | 1937 | 33 | 1937 | 125 | 1937 | 0 |
| O. D. Mowry | 100 | 49 | 100 | 49 | 100 | 133 | 100 | 16 | 100 | 0 |
| O. D. and Virginia Mowry | 400 | 199 | 400 | 199 | 400 | 97 | 400 | 66 | 400 | 0 |
| A. Klopot | 1200 | 346 | 1200 | 246 | 1200 | 17 | — | 0 | — | 0 |
| E. H. Mandlebaum | 50 | 25 | 50 | 25 | 50 | — | — | 0 | — | — |
| Benjamin Gottschalk | 50 | 25 | — | 25 | — | — | — | — | — | 0 |
| Ira Levy | 50 | 25 | 50 | 25 | 50 | 17 | 50 | 8 | 50 | 0 |
| Daniel W. Northup | 2319 | 886 | 2319 | 886 | 2319 | 411 | 2279 | 0 | 2279 | 0 |
| Myrtis C. Usher | 1968 | 579 | 1968 | 579 | 1968 | 386 | 1968 | 0 | 1968 | 0 |
| Charles W. Hine | 767 | 25 | 767 | 25 | 767 | 17 | 767 | 8 | 767 | 0 |
| Daniel W. Northup and Jean Miles, Trustee | | 59 | | 59 | | 59 | | 29 | | 0 |
| Henry A. Klopot | | 249 | | 349 | | 299 | | 198 | | 0 |
| Harry C. Usher, Jr. | 326 | 224 | 326 | 224 | 326 | 149 | 326 | 75 | 326 | 0 |
| John C. Usher | | 224 | | 224 | | 149 | | 0 | | 0 |
| Second National Bank, Trustee | | 496 | | 496 | | 331 | | 165 | | 0 |
| Jean N. Miles | | 459 | | 459 | | 466 | | 439 | | 0 |
| Albany Distributing Co. | | 20 | | 20 | | 13 | | 6 | | 0 |
| Harvard Trust Co. | | 2 | | 2 | | — | | — | | — |
| James T. Patterson, Jr. | | 2 | | 2 | | — | | — | | — |
| Reconstruction Finance Corp. | | 106 | | — | | — | | — | | — |
| Yale University | | 2 | | — | | — | | — | | — |
| T. L. Watson Co. | | 148 | | — | | — | | — | | — |
| Charles B. Walden | | 19 | | — | | — | | — | | — |
| Ann J. Morgan | | | | 50 | | 33 | | 16 | | 0 |
| Helen T. Morgan | | | | 50 | | 33 | | 16 | | 0 |
| Daniel J. Morgan | | | | 48 | | 32 | | 16 | | 0 |
| Lizzie Gottschalk | | | 50 | 25 | 50 | 17 | | 0 | | 0 |
| Egbert J. Miles, Jr. | | | | | | | 40 | — | 40 | — |
| | 9349 | 4550 | 9349 | 4423 | 9349 | 2948 | 8049 | 1185 | 8049 | 0 |

64. On November 24, 1944 the stockholders of I. Newman & Sons, Inc. voted that one third of its then outstanding second preferred stock be retired by the company on February 28, 1945 at the redemption price of $52.50 per share plus the dividend due February 28, 1945. The company did acquire and retire 1,-475 of said shares during 1945, reducing the number of shares outstanding at December 31, 1945 to 2,948 shares (see finding 56). The second preferred stock so acquired and retired in 1945 included the 295 shares acquired from the plaintiff, Daniel W. Northup, and the 125 shares acquired from the plaintiff, P. W. Hine, and the 193 shares acquired from the plaintiff, Myrtis C. Usher.

65. On May 17, 1946, the stockholders of I. Newman & Sons, Inc. voted that one half of its second preferred stock then outstanding be retired on August 31, 1946 at the price of $52.50 per share plus the dividend due August 31, 1946. The Company had theretofore in April, 1946 acquired for retirement 205 shares of its second preferred stock from the plaintiff, Daniel W. Northup, and acquired no further shares from him, and in July, 1946 acquired 126 shares of its second preferred stock from the plaintiff, P. W. Hine, and acquired no further shares from him in 1946. During 1946 the company on the dates stated in finding 42 acquired from the plaintiff, Myr-

tis C. Usher, 386 shares of its preferred stock. During 1946 the company acquired from its stockholders for retirement a total of 1,763 of said preferred shares, thereby reducing the number of preferred shares outstanding at December 31, 1946 to 1,185. Said acquisitions included all of said preferred stock held at the beginning of 1946 by four stockholders totaling 569 shares, and approximately one-half of the preferred stock held by each other preferred shareholder.

66. On December 26, 1946, the stockholders of I. Newman & Sons, Inc. voted to retire all of its outstanding preferred stock on February 28, 1947 at the price of $52.50 per share plus the dividend due February 28, 1947. During 1947 the company did acquire and retire all of its outstanding second preferred stock, including the 125 shares acquired from the plaintiff, P. W. Hine.

67. Neither Mrs. Jean N. Miles, nor her trust, ever owned any common stock in I. Newman & Sons, Inc. The trust purchased 120 shares of the second preferred stock from D. W. Northup on February 29, 1936, and an additional 20 shares from D. W. Northup on April 17, 1945. Said purchases were at $50 per share. Said 140 shares were transferred to I. Newman & Sons, Inc. at $52.50 per share on the following dates:

| | |
|---|---|
| Prior to 1945 | 61 shares |
| February 28, 1945 | 20 shares |
| August 31, 1946 | 30 shares |
| February 28, 1947 | 29 shares |
| | |
| Total | 140 shares |

The acquisitions of second preferred stock of I. Newman & Sons, Inc. by Mrs. Jean N. Miles, were as follows:

| | | |
|---|---|---|
| December 31, 1941 | Gift from D. W. Northup | 460 shares |
| February 12, 1942 | Gift from D. W. Northup | 80 shares |
| April 17, 1945 | Purchased from D. W. Northup at $50 per share | 160 shares |
| November 21, 1946 | Purchased from D. W. Northup at $50 per share | 206 shares |
| | Total | 906 shares |

Payment for the 160 shares purchased in 1945 was made on or before May 4, 1945. Payment for the 206 shares purchased in 1946 was made on November 26, 1946.

| | |
|---|---|
| November 29, 1943 | 81 shares |
| February 28, 1945 | 153 shares |
| August 31, 1946 | 233 shares |
| February 28, 1947 | 439 shares |
| Total | 906 shares |

Said shares were transferred to I. Newman & Sons, Inc. at $52.50 per share on the following dates:

68. D. W. Northup owned 2,833 shares of common stock of I. Newman & Sons, Inc. on February 29, 1936 which he had acquired at the times and for the cost listed below:

| | No. of Shares | Cost |
|---|---|---|
| 10/15/23 (Lot A) | 1,000 | 0 |
| 10/15/23 (Lot B) | 854 | 0 |
| November, 1926 — $30 per share (Lot C) | 293 | $ 8,790.00 |
| November, 1926 — $30 per share (Lot D) | 376 | 11,280.00 |
| November, 1926 — $35 per share (Lot E) | 400 | 14,000.00 |
| | 2,923 | 34,070.00 |
| May, 1930 Gift to Myrtis C. Usher From (Lot B) | 90 | 0 |
| Shares held 2/29/36 | 2,833 | $34,070.00 |

69. On February 29, 1936, D. W. Northup received from I. Newman & Sons, Inc. a nontaxable stock dividend consisting of 2,833 shares of second preferred stock. He maintained no records to identify such referred shares as derived from any particular lot of common stock. On the first in first out basis, such lots of preferred stock, designated "AA", "BB", etc. were disposed of by him as follows:

### Lot AA

| | | |
|---|---|---:|
| 2/29/36 | – Sold to Mrs. Jean N. Miles Trust | 120 |
| 1939 | – Retired | 163 |
| 1940 | – Retired | 383 |
| 1941 | – Retired | 334 |
| | | **1,000** |

### Lot BB

| | | |
|---|---|---:|
| 1941 | – Retired | 251 |
| 12/31/41 | – Gift to Mrs. Jean N. Miles | 460 |
| 2/12/42 | – Gift to Mrs. Jean N. Miles | 53 |
| | | **764** |

### Lot CC

| | | |
|---|---|---:|
| 2/12/42 | – Gift to Mrs. Jean N. Miles | 27 |
| 1943 | – Retired | 156 |
| 2/28/45 | – Retired | 110 |
| | | **293** |

### Lot DD

| | | |
|---|---|---:|
| 2/28/45 | – Retired | 185 |
| 4/17/45 | – Sold to Mrs. Jean N. Miles | 160 |
| 4/17/45 | – Sold to Mrs. Jean N. Miles Trust | 20 |
| 4/19/46 | – Retired | 11 |
| | | **376** |

### Lot EE

| | | |
|---|---|---:|
| 4/19/46 | – Retired | 194 |
| 11/21/46 | – Sold to Mrs. Jean N. Miles | 206 |
| | | **400** |

70. P. W. Hine owned 1937 shares of common stock of I. Newman & Sons, Inc. on February 29, 1936, which he had acquired at the times and for the costs listed below:

| | No. of Shares | Cost |
|---|---|---|
| 10/15/23 (Lot A) | 1,000 | 0 |
| 10/29/26 – $20 per share (Lot B) | 720 | $14,400. |
| 1/ 8/29 – $25 per share (Lot C) | 267 | 6,675. |
| | 1,987 | 21,075. |
| 1/ 8/31 – Gift to C. W. Hine from (Lot A) | 50 | 0 |
| Balance Held 2/29/36 | 1,937 | 21,075. |

71. On February 26, 1936 P. W. Hine received from I. Newman & Sons, Inc. a nontaxable stock dividend of 1937 shares of second preferred stock. He maintained no records to identify such preferred shares as derived from any particular lot of common stock. On the first in first out basis, such lots of preferred stock designated "AA", "BB", etc. were disposed of by him as follows:

Lot AA

| | |
|---|---|
| 2/29/36 – Transferred to Company in payment of debt | 177 |
| 1939 – Retired | 106 |
| 1940 – Retired | 248 |
| 1/ 6/41 – Transferred to Second National Bank as Trustee | 419 |
| | 950 |

Lot BB

| | |
|---|---|
| 1/ 6/41 – Transferred to Second National Bank as Trustee | 381 |
| 1941 – Retired | 164 |
| 1943 – Retired | 66 |
| 2/28/45 – Retired | 109 |
| | 720 |

Lot CC

| | |
|---|---|
| 2/28/45 – Retired | 16 |
| 8/31/46 – Retired | 126 |
| 2/28/47 – Retired | 125 |
| | 267 |

72. Myrtis C. Usher, on February 29, 1946, owned 2,068 shares of common stock of I. Newman & Sons, Inc., of which 90 shares were acquired by gift from D. W. Northup and 1,978 shares by gift from her husband, Harry C. Usher.

Harry C. Usher had acquired his common stock in I. Newman & Sons, Inc. at the times and for the costs listed below:

| | No. of Shares | Cost |
|---|---|---|
| October, 1923 | 1,000 | 0 |
| December, 1926 — at $20 per share | 720 | $14,400. |
| December, 1929 — at $25 per share | 268 | 6,700. |
| | 1,988 | 21,100. |
| May, 1932 — Gift to Myrtis C. Usher | 1,978 | 20,850. |
| Balance | 10 | 250. |

73. The common stock of I. Newman & Sons, Inc. owned by Myrtis C. Usher at February 29, 1936 was acquired by her at the times listed below and the donor's cost for each lot was as listed below:

| | No. of Shares | Cost |
|---|---|---|
| May, 1930 — Gift from D. W. Northup (Lot A) | 90 | 0 |
| May, 1932 — Gift from Harry C. Usher (Lot B) | 1,000 | 0 |
| May, 1932 — Gift from Harry C. Usher (Lot C) | 720 | $14,400. |
| May, 1932 — Gift from Harry C. Usher (Lot D) | 258 | 6,450. |
| | 2,068 | 20,850. |

74. On February 29, 1936, Myrtis C. Usher received from I. Newman & Sons, Inc. a nontaxable stock dividend of 2,068 shares of second preferred stock. She maintained no records to identify such preferred shares as derived from any particular lot of common stock. On the first in first out basis, such lots of preferred stock designated "AA", "BB", etc. were disposed of by her as follows:

Lot AA

| | |
|---|---:|
| September, 1939 — Gift to Harry C. Usher, Jr. | 90 |

Lot BB

| | |
|---|---:|
| September, 1939 — Gift to Harry C. Usher, Jr. | 360 |
| September, 1939 — Gift to John C. Usher | 450 |
| November, 1939 — Retired | 70 |
| November, 1940 — Retired | 120 |
| | 1,000 |

Lot CC

| | | |
|---|---|---:|
| 1940 | — Retired | 45 |
| 1941 | — Retired | 252 |
| 1943 | — Retired | 102 |
| November, 1945 | — Retired | 193 |
| May, 1946 | — Retired | 128 |
| | | 720 |

Lot DD

| | | |
|---|---|---:|
| May, 1946 | — Retired | 22 |
| August, 1946 | — Retired | 43 |
| November, 1946 | — Retired | 80 |
| December, 1946 | — Retired | 113 |
| | | 258 |

75. D. W. Northup purchased 293 shares of common stock of I. Newman & Sons, Inc. in November, 1926 at $30 per share (Lot C). With respect to these shares, he received 293 shares of second preferred stock as a nontaxable stock dividend on February 29, 1936. On the first in first out basis, 27 shares of such preferred stock were included in the gift of preferred stock which D. W. Northup made to Jean N. Miles on February 12, 1942. On the first in first out basis, these 27 shares of preferred stock were retired by I. Newman & Sons, Inc. by payment to Jean N. Miles in 1947. In the final audit of the 1947 income tax return of Jean N. Miles, the Internal Revenue Service held that such retirement resulted in long term capital gain and that the donor's basis for said 27 shares of preferred stock was $783.50. This amount was 30/31 of the $30 per share paid by the donor, D. W. Northup, for the 27 shares of common stock with respect to which the 27 shares of second preferred stock were issued as a stock dividend in 1936.

76. I. Newman & Sons, Inc. was organized in October, 1923 to purchase the business theretofore conducted by the partnership of I. Newman & Sons. The transaction was promoted by the plaintiff, Daniel W. Northup, who was then a Vice-President of the Bassett Company. Upon organization, I. Newman & Sons, Inc. issued 6,000 shares of first preferred stock having a par value of $100 per share, and 10,000 shares of common stock having no par value.

77. The first preferred stock was entitled to cumulative dividends of 8% per annum, had limited voting power, was entitled to $100 per share plus accrued dividends on liquidation, and was redeemable at $105 per share plus accrued dividends. There was no provision for a sinking fund and no requirement that the preferred stock be retired. So long as the preferred stock was outstanding the dividends on common stock could not exceed 10 per cent of the net profits in any one year after provision for a sinking fund for the retirement of debentures, if any, and for all other fixed charges including preferred stock dividends.

78. Of the 6,000 shares of first preferred stock, 2,000 shares were issued in payment of $200,000 of the purchase price of the business and 4,000 shares were issued for cash at $100 per share. The common stock was issued for a nominal consideration.

79. By January, 1924, the common and first preferred stocks of I. Newman & Sons, Inc. were held of record as follows:

| | First Preferred | Common |
|---|---|---|
| P. W. Hine | 1,000 | 1,000 |
| H. C. Usher | 1,000 | 1,000 |
| James T. Patterson | 500 | 1 |
| John J. McKeon | 0 | 1 |
| Helen L. Newman | 275 | 0 |
| Jacob J. Newman | 413 | 0 |
| A. L. Newman | 412 | 0 |
| F. A. Russ | 1,500 | 0 |
| 15 old employees of the predecessor partnership | 850 | 950 |
| I. Newman & Sons Benefit Association | 50 | 0 |
| Tameling, Keene & Co. | 0 | 7,048 |
| | 6,000 | 10,000 |

80. The stockholders of record were the beneficial owners of the stock registered in their names, except as to the 1500 shares of preferred stock in the name of F. A. Russ and the 7,048 shares of common stock in the name of Tameling, Keene & Co. F. A. Russ was President of the Bassett Company. The 1,500 shares of preferred stock registered in the name of F. A. Russ were owned by various individuals associated with the Bassett Company, and of these preferred shares Daniel W. Northup owned 375. The 7,048 shares of common stock registered in the name of Tameling, Keene & Co. were owned by various individuals, most of whom were associated with the Bassett Company, and of such common shares 500 were owned by James T. Patterson, and 1,854 by Daniel W. Northup. The three Newmans and the I. Newman & Sons Benefit Association, who owned first preferred stock, owned no common stock. John J. McKeon, who owned one share of common stock owned no first preferred stock.

81. After I. Newman & Sons, Inc. had paid off $700,000 in debenture bonds which it had sold to the public, it retired its first preferred stock at $105 per share. Such retirements were generally, but not always, pro rata to the holdings of preferred stock, but were not substantially pro rata to the holdings of common stock. Such retirements took place from time to time beginning in 1928 and ending in 1935. During this period there were various changes in the holdings of common stock.

82. The fair market value on February 29, 1936 of the second preferred stock of I. Newman & Sons, Inc. was thirty dollars per share and the fair market value of the common stock, after the stock dividend was issued, was five dollars per share.

83. The redemptions by I. Newman & Sons, Inc., of second preferred stock held by each of the plaintiffs, which occurred in 1945, 1946 or 1947 were essentially equivalent to the distribution of taxable dividends.

## Conclusions of Law

1. The court has jurisdiction of the parties and subject matter of the action.

2. Money received by the taxpayers on the redemption of second preferred stock of I. Newman & Sons, Inc. in 1945, 1946 and 1947 was includable in gross income as dividend income for the year in which received.

3. Money received by the taxpayer Northup from Mrs. Miles and her trust was not includable as dividend income but as capital gains.

4. Plaintiff Northup is entitled to recover of the United States the overpayment which resulted from the erroneous treatment of the proceeds of the sale of stock of I. Newman & Sons, Inc. to Mrs. Miles and her trust in 1945 and 1946 as dividend income, with interest thereon from the date of payment of the deficiency assessment thereon.

5. Defendants are entitled to judgment against plaintiffs Hine and Usher.